TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 85-907 |
| of | : | MARCH 14, 1986 |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| RONALD M. WEISKOPF<br>Deputy Attorney General | : | |

_____

THE HONORABLE ERNEST L. KONNYU, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May the city council of a general law city specify the location of the office where the elected treasurer conducts city business?

CONCLUSION

A city council of a general law city may specify the location where the elected city treasurer conducts city business.

ANALYSIS

Section 36501 of the Government Code provides for the government of a general law city to be vested in a five member city council, a city clerk, a city treasurer, a chief of police, a fire chief, and such subordinate officers or employees as are provided

1

for by law. (Gov. Code, § 36500.)[1] Section 36505 requires the city council to appoint the chief of police and permits it to appoint a city attorney, a superintendent of streets, a civil engineer, and "such other subordinate officers or employees as it deems necessary" (§ 36505; see also § 36501) which appointive officers and employees hold office "during the pleasure of the city council." (§ 36506; *Chambers* v. *City of Sunnyvale* (1942) 56 Cal.App.2d 438, 441; but see *Ball* v. *City Council* (1967) 252 Cal.App.2d 136, 141, and *Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444, 450.)

Needless to say, city councilpersons are elected. (§ 36503; cf. § 36508.) Generally speaking, so too are the city clerk and city treasurer (§ 36503; cf. §§ 36502, 36508, 36509), but the city council may submit to the electorate the question of whether these positions should be appointive (§§ 36508, 36509) and thereafter held at the pleasure of the city council (§ 36510) rather than for fixed terms (§§ 35442, 35443, 36503). (See generally 67 Ops.Cal.Atty. Gen. 405, 408-409 (1984).) Whether they are appointed or elected however, the compensation of the city clerk and the city treasurer of a general law city is fixed by the city council by resolution or ordinance. (Compare §§ 36506 & 37100 with § 36517.)

The duties of a city treasurer of a general law city are specified by statute: he is to "receive and safely keep all money coming into his hands as treasurer" (§ 41001); he must perform such duties relative to the collection of city taxes and license fees as may be prescribed by ordinance (§ 41005); he must comply with all the laws governing deposit and securing of public funds and the handling of trust funds in his possession (§ 41002); he must pay out money only on warrants signed by legally designated persons (§ 41003); and he must at least monthly submit a written report and accounting of all receipts, disbursements, and fund balances to the city clerk - the accounting officer of a general law city who maintains records of its financial condition (§§ 40802, 40804; but see § 40805.5), and the city council (§ 41004; cf. § 34000, defining "legislative body"). The treasurer may appoint deputies (§ 41006) who hold office at his pleasure and receive such compensation as is provided by the city council. (§ 41007.)

We are asked whether a city council may require the elected treasurer to perform these statutory duties at a particular place, as for example at the city hall. We conclude that it may.

In 43 Ops.Cal.Atty.Gen. 119 (1964) we were essentially asked the same question with respect to the city council's authority vis-a-vis the elected city clerk and answered it affirmatively. Although we acknowledged the want of express statutory authority for a city council of a general law city to regulate the working hours and the

---

[1] All section references herein are to the Government Code.

place of work of an elected city clerk (43 Ops.Cal.Atty.Gen., *supra*, at 119), we felt such authority to be inferentially granted by sections 34000 (city council is the legislative body of a city), 37100 (it may pass ordinances not in conflict with general law) and 37112 (it may perform all acts necessary or proper in order to carry out its governing duties). (43 Ops.Cal.Atty.Gen., *supra*, at 119.) Thus, we said, "An ordinance passed by a city council governing the . . . place of work of an elected city clerk would . . . initially be presumed valid." (*Ibid.*)

That initial conclusion was strengthened by reference to section 40812 which states that "[the city clerk] shall perform such additional duties as are prescribed by ordinance." "If a city council may add to the statutory duties of a city clerk" we said, "it is difficult to perceive why the city council could not by ordinance say where and when these duties are to be carried out, or at least frame the duties in such language that by their nature they could only be carried out at certain times and places." (43 Ops.Cal.Atty.Gen., *supra*, at 120.) Finally we pointed to section 36517 (which enables a city council to fix the city clerk's compensation as well as the city treasurer's) and said that since there was no limit on the salary-making authority contained therein, "the council could adopt an ordinance prescribing a salary for the city clerk payable on an "hours-worked-in-office" basis or perhaps otherwise conditioning receipt of salary upon the number of hours worked at a specific location." (43 Ops.Cal.Atty.Gen., *supra*, at 120.)

There is no cogent reason why the foregoing rationale and conclusion should not apply to the elected city treasurer. The general ordinance making powers of the city council set forth in sections 37100 and 37112 are equally forceful; its ability to prescribe additional duties for the city clerk which are cited (§ 40812) finds parallel in its ability to prescribe by ordinance duties relative to the collection of taxes and license fees for the treasurer to perform (§ 41005); and its authority to prescribe the treasurer's compensation derives from the same source as its ability to prescribe the city clerk's. (§ 36517.) Furthermore, in the municipal scheme of things, the Legislature has treated the city treasurer and the city clerk alike: both are part of the government of a general law city (§ 36501(b)(c)), both are normally elected with provision made for their being appointed (§§ 36508, 36509), and both are required to file bonds as public officers. (§ 36518.) In addition, the duties of the two offices are complementary. The city treasurer and city clerk handle the financial affairs of the city together: the treasurer receives (§§ 41003, 36522) and pays out (§ 41003; *Draper* v. *Grant* (1949) 91 Cal.App.2d 566, 570) city monies and the city clerk, as city accounting officer (§§ 40802, 40804), audits his or her so doing (§§ 41004, 36522; *McConoughey* v. *Jackson* (1894) 101 Cal. 265, 269; see also § 37203). Since their positions are similarly established and their municipal duties interrelated, we see no reason to treat them differently.

3

Nevertheless, it has been suggested that our earlier conclusion should not be made applicable to an elected treasurer because, unlike the elected clerk, he does not deal with the public but rather with financial institutions and accordingly there is no need for him to have an office in a public building. We reject the suggestion. Aside from the technicality that financial institutions may be considered as much a part of "the public" as are individual citizens (cf. 68 Ops.Cal.Atty.Gen. 286, 288-290 (1985), we do not accept the premise that a city treasurer would not have occasion to deal with the latter. Any holder of a city warrant would be just as entitled to present it and have it paid at the treasurer's office as at a financial institution, and the treasurer's duties with respect to the collection of city taxes and license fees (§ 41005) would see contact with individual citizens at the treasurer's office. As far as setting the location of that office is concerned, the convenience of the public should take precedence over the convenience of the public officer with whom it deals. As we concluded before:

> "It should be remembered that cities perform many services which cannot satisfactorily be confined to a general time schedule, as such services are based upon reasons of public necessity. There would appear to be merit in allowing the city council of each city to determine and prescribe for the various offices of the particular city the place and hours of operation which would best serve the public. Cf. 33 Ops.Cal. Atty.Gen. 37, 39 (1959)." (43 Ops.Cal.Atty.Gen., *supra*, at 120.)

Accordingly we conclude that our 1964 opinion is apropos and that a city council of a general law city may prescribe the place for the elected city treasurer to conduct official business.

Although a city council of a general law city has a good deal of power over its city treasurer -- setting his/her compensation (§ 36515), prescribing in part his/her duties (§ 41005), and saying where the place shall be where the treasurer's conduct of the city's fiscal affairs shall be performed, still the office of treasurer is one established by state statute and the actions a city council can take in its regard are not without limit.

The California Constitution has granted general power to cities to make and enforce within their limits all local, police and other ordinances that are not in conflict with general laws (Cal. Const., art. XI, § 2; cf. *id.*, § 7 and Gov. Code, § 37100), and has required the Legislature to provide appropriate powers thereto (*id.*, art. XI, § 2). (68 Ops.Cal.Atty.Gen. 175, 178, *supra*.) The Legislature has answered its constitutional charge and has created a general design of municipal government (Gov. Code, tits. 4, 5) and as part of that scheme, it has created the independent office of city treasurer with important duties to safeguard the financial condition of a municipality. Needless to say, a general law city cannot act to destroy that independent office. (Cal. Const., art. XI, § 2;

4

Gov. Code, § 37100; 68 Ops.Cal.Atty.Gen. 175, 178, *supra*.)  For example, although it has power to fix the compensation for the office (§ 36517), it can not refuse to fix it, nor can it fix it so low, that no competent person would deign to serve.  (*Butler* v. *Williams* (1929) 207 Cal. 732, 736; *De Merritt* v. *Weldon* (1908) 154 Cal. 545, 549, 551; *Mitchell* v. *Walker* (1956) 140 Cal.App.2d 239, 243.)  As was said in *De Merritt* v. *Weldon, supra*, 154 Cal. at 549:

> "[W]here the state legislature has seen fit to determine by lawful act that a municipality shall have a certain designated officer to perform duties specified in the act, who shall be paid for his services a compensation, which compensation shall be fixed by the legislative body of the town, -- in this case the board of trustees, -- such legislative body of the town may not effectually provide that there shall be no compensation at all, or practically destroy the office by fixing the compensation at so low a figure that no one will discharge the duties thereof for the compensation fixed.  Such a provision by the trustees would appear to be in conflict with the act of the state legislature, and therefore void."  (Accord *Butler* v. *Williams, supra*; *Mitchell* v. *Walker, supra*.)

And just as a city council may not effectively destroy a municipal office by setting its compensation so low that no one would serve to discharge its duties, so too may it not emasculate the Legislature's design for municipal government by depriving an officer adequate quarters and indispensable help and equipment with which his or her statutorily set duties might be carried out.  (Cf. *Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, 240-242, 244.)  Instead, a city council is required to provide for appropriate quarters and such help and equipment as is essential for the effective functioning of the office in question.  As with the question of compensation, however, the question of exactly what quarters, help and equipment are needed for the functioning of a municipal office is a matter for a city council to decide in its budgetary process, and where its discretion is exercised fairly and in good faith it will not be second guessed.  (Cf. *De Merritt* v. *Weldon, supra*, 154 Cal. at 551; *Mitchell* v. *Walker, supra*, 140 Cal.App.2d at 243; *Hicks* v. *Board of Supervisors, supra*, at 234, 235.

With this in mind then, with respect to the specific inquiry posed we conclude it to be within the authority of a city council of a general law city to prescribe the location of the office where the elected city treasurer conducts his/her official business.

*****